IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**RONALD C. ROBERTSON**  **PLAINTIFF**

**V.**  **CASE NO.: 1:16-cv-295-HSO-JCG**

**NANCY A. BERRYHILL,**  **DEFENDANT**
*Acting Commissioner of the Social Security Administration*

### REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Robert C. Robertson seeks judicial review of the Commissioner of the Social Security Administration's decision denying his claim for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 423(d)(1)(A). Plaintiff has filed a Motion for Summary Judgment (ECF No. 9), urging the Court to reverse the Commissioner or remand. The Motion has been fully briefed. (ECF Nos. 11, 12). Having considered the submissions of the parties, the record, and relevant law, the undersigned Magistrate Judge submits this Report and Recommendation to the District Judge and recommends that Plaintiff's Motion for Summary Judgment be DENIED and the Commissioner's decision AFFIRMED. The Commissioner applied the correct legal standards, and her decision is supported by substantial evidence.

### I. Background

Plaintiff completed high school. He has previously been employed as a store stock clerk and packer at a manufacturing plant. (ECF No. 8, at 69-70, 99-101). Plaintiff applied for Title II disability benefits in 2010, alleging disability beginning

in 2008. Plaintiff later amended his alleged onset date to July 29, 2010. (ECF No. 8 at 413). Plaintiff's was forty-six years old on the alleged onset date.

Plaintiff had three surgeries to his left knee in 1992 and 1993 and three surgeries to his right knee in 2002 and 2003. He was limited to sedentary work in 2004 and 2005 by his treating orthopedist, Dr. Andre Fontana. Plaintiff argues that additional problems with hypertension in 2010 and the side effects of his high blood pressure medication, combined with his knee problems, caused him to become disabled in 2010. (ECF No. 8 at 435-441, 457). Plaintiff maintains that the side effects of his medications caused frequent urination and headaches. (ECF No. 8 at 437-39, 456-60).

Plaintiff's claims were initially denied and denied upon reconsideration, prompting Plaintiff to request a hearing before an administrative law judge (ALJ). After a hearing, ALJ Wallace E. Weakley issued a decision unfavorable to Plaintiff. The Appeals Council denied Plaintiff's request for review, and Plaintiff filed a Complaint in this Court.

On April 6, 2015, United States Magistrate Judge Robert H. Walker remanded Plaintiff's case to the Commissioner because ALJ Weakley's decision did not discuss the treatment records or medical opinion of Dr. Fontana, the orthopedist who performed the surgeries to Plaintiff's right knee in 2002 and 2003 and who imposed permanent work restrictions in 2004 and 2005. (ECF No. 8, at 558). Dr. Fontana opined that Plaintiff had permanent restrictions of no lifting from the floor, no crawling, occasional lifting of up to fifteen pounds, and walking and standing up

to two hours total with breaks. *Id.* Judge Walker could not conclude that the ALJ's failure to address Dr. Fontana's treatment records and opinion was harmless error. *Id.* at 559.

Upon receipt of Judge Walker's Order remanding the case, the Appeals Council vacated ALJ Weakley's decision and remanded for further proceedings consistent with Judge Walker's Order. *Id.* at 563. Following a supplemental hearing, ALJ Laurie H. Porticello issued a decision unfavorable to Plaintiff on January 27, 2016. Judge Porticello determined that from July 29, 2010, through December 31, 2011, the last date insured, Plaintiff was capable of performing a full range of sedentary work as defined in 20 C.F.R. § 404.1567(a), despite severe impairments of post multiple knee surgeries and obesity. *Id.* at 415, 418.

The Appeals Council denied review of ALJ Porticello's decision, rendering her decision the final decision of the Commissioner. Plaintiff commenced the present action by filing a Complaint on August 11, 2016.

## II. Standard of Review

Disability insurance is governed by Title II, 42 U.S.C. § 402 *et seq.*, of the Social Security Act. Numerous regulatory provisions govern disability insurance. *See* 20 C.F.R. Pt. 404. The Social Security Act defines "disability" as a "medically determinable physical or mental impairment" lasting at least twelve months that prevents the claimant from engaging in "any substantial activity." 42 U.S.C. § 423(d).

To evaluate a claim of disability, the ALJ uses a five-step sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. Under this analysis, the ALJ may decide that a claimant is disabled if he or she finds that: (1) the claimant is not presently engaged in substantial gainful activity; (2) the claimant has a severe, medically determinable, physical or mental impairment that significantly limits his physical or mental ability to do basic work activities and meets the duration requirement; (3) the claimant's impairment or combination of impairments meets or equals an impairment contained in the listings of impairments of Appendix 1, 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) if disability cannot be found based on a listing in Appendix 1, the impairment prevents the claimant from performing any past relevant work; and (5) the impairment prevents the claimant from doing any other work, considering the claimant's residual functional capacity, age, education, and past work experience.

The claimant has the burden through the first four steps. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). Once the claimant shows that he can no longer perform his previous work, the burden shifts to the Commissioner to show that there is other work existing in significant numbers in the national economy that the claimant can perform. *Newton v. Apfel,* 209 F.3d 448, 453 (5th Cir. 2000). The Commissioner "may meet this burden by reference to the Medical-Vocational Guidelines of Appendix 2 of the regulations and/or by obtaining vocational expert testimony." *Stevens v. Shalala,* 36 F.3d 90, *1 (5th Cir. 1994); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2. If the Commissioner meets the burden at step five of showing that

4

there is other work in the national economy, the claimant must then prove that he is not able to perform other work. *Id.*

Judicial review of the Commissioner's decision that a claimant is not disabled is limited under 42 U.S.C. § 405(g) to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the correct legal standards. *Perez,* 415 F.3d at 461. "If the Commissioner's findings are supported by substantial evidence, they are conclusive." *Id.* (citing *Richardson v. Perales,* 402 U.S. 389, 390 (1971)). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Id.* A finding of no substantial evidence is appropriate only if there is "a conspicuous absence of credible choices or no contrary medical evidence." *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

### III. Discussion

Plaintiff's appeal focuses on the residual functional capacity (RFC) assigned to him by the ALJ. *See* 20 C.F.R. § 404.1520(a)(4) and (e). The ALJ found that Plaintiff was capable of performing a full range of sedentary work from July 29, 2010, through December 31, 2011, the last date insured. (ECF No. 8, at 415). Plaintiff alleges that ALJ Porticello did not sufficiently consider the opinion of Dr. Fontana, Plaintiff's treating orthopedist from 2002 to 2005, and the doctor who performed the surgeries to Plaintiff's right knee in 2002 and 2003. (ECF No. 8, at 436; ECF No. 10, at 7). Thus, according to Plaintiff, the Commissioner did not

5

comply with this Court's Order of Remand. (ECF No. 10, at 5-6). Plaintiff also contends that ALJ Porticello should not have applied the Medical-Vocational Guidelines (the Grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2., because Plaintiff had exertional impairments that prevented him from engaging in a full range of sedentary work and non-exertional impairments that significantly affected his RFC. Plaintiff asserts that ALJ Porticello should have obtained vocational expert testimony and by failing to do so, "reached her own conclusion." *Id.* at 9.

A. <u>The ALJ Complied with the Order of Remand and Provided Good Cause for Discounting Dr. Fontana's Opinion</u>

Plaintiff alleges that the ALJ's decision should be reversed because the ALJ merely recited but did not sufficiently consider the permanent work restrictions imposed by treating orthopedist Dr. Fontana. In his report of July 16, 2004, Dr. Fontana opined that Plaintiff could return to light duty work as a store clerk but with permanent restrictions of no lifting from the floor, no crawling, occasional lifting of up to fifteen pounds, and walking and standing up to two hours total with breaks. (ECF No. 8, at 335). The ALJ discounted Dr. Fontana's opinion and gave "significant weight" to the opinion of Dr. Coulter, the consultative examiner. The ALJ gave "some weight" to the opinion of Dr. Kossman, the State agency physician.

The ALJ has an affirmative duty to weigh every medical opinion in the record. 20 C.F.R. § 404.1527(c). The opinion of a treating physician is to be given controlling weight if the opinion is well-supported by clinical and laboratory findings and is not inconsistent with other substantial evidence in the record. Social Security Ruling (SSR) 96-2p, 1996 WL 374188. The ALJ may accord less weight,

little weight, or even no weight to a treating physician's opinion for good cause, such as where the treating physician's opinion is conclusory, not credible, or unsupported by objective medical evidence or clinical laboratory findings. *Perez,* 415 F.3d at 465-66; *Newton,* 209 F.3d at 455. "Even if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it is also 'not inconsistent' with the other substantial evidence in the case record." SSR 96-2p, 1996 WL 374188.

The ALJ provided sufficient reasons for discounting Dr. Fontana's opinion. First, Dr. Fontana's opinion was given in 2004 and 2005, many years before the alleged date of disability in 2010. (ECF No. 8, at 335, 422). Second, after Dr. Fontana's opinion was given, Plaintiff worked at two occupations described as medium in exertional demand. *Id.* at 422, 440, 447-48. In 2007, he worked as a store clerk, and in 2008, he worked as a packer for a filter manufacturer. *Id.* at 422, 440, 447. The ALJ took into account that Plaintiff "did not persist at either of these occupations even a year" but found that "this does not establish inability to perform work within the determined residual functional capacity." *Id.* at 422. Third, the ALJ compared Dr. Fontana's opinion to Dr. Coulter's and choose to give Dr. Coulter's "significant weight" because the "examination occurred in the period after the alleged onset date but prior to the date last insured." *Id.*

The ALJ's decision to discount Dr. Fontana's opinion is the type of determination within the province of the ALJ, who is "is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions

7

accordingly." *Stone v. Heckler,* 770 F.2d 482, 485 (5th Cir. 1985). The ALJ was free to assign Dr. Fontana's less weight or even no weight because she stated good cause for doing so. Plaintiff was able to work in 2007 and 2008 despite limitations that he later asserted were disabling, and Dr. Coulter's opinion was more relevant because it was given within the alleged disability period and after Plaintiff last worked. *See Vaughan v. Shalala,* 58 F.3d 129, 131 (5th Cir. 1995); *Fraga v. Bowen,* 810 F.2d 1296, 1305 & n.11 (5th Cir. 1987). No physician, including Dr. Fontana, opined that Plaintiff was incapable of working *See Vaughan,* 58 F.3d at 131.

B.    The ALJ's Application of the Grids is Supported by Substantial Evidence

Grid Rule 201.21 mandated a finding of no disability for a younger individual limited to sedentary work with a high school education. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.24. Plaintiff contends that application of the Grids was precluded because Plaintiff had exertional impairments that prevented him from engaging in a full range of sedentary work and non-exertional impairments that significantly affected his RFC. According to Plaintiff, the ALJ was required, under the circumstances, to obtain testimony from a vocational expert.

At the fifth step, the Commissioner may satisfy her burden of showing that the claimant can perform other types of work in the national economy by applying the Grids, if appropriate, or by taking the testimony of a vocational expert. *See* 20 C.F.R. § 404.1567; SSR 83-10, 1983 WL 31251. The Grids permit the Commissioner to take administrative notice of jobs in the national economy that a claimant can perform. *See* 20 C.F.R. § 404.1566(d). The Grids reflect "major functional and

vocational patterns" and incorporate the analysis of a claimant's age, education, and work experience, in combination with the claimant's RFC. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(a). Where the claimant's RFC and other vocational factors fall precisely within the Grids, the rules will dictate either a finding of "disabled" or "not disabled." The Commissioner may rely exclusively on the Grids if (1) the claimant suffers only from exertional impairments or (2) the claimant's non-exertional impairments do not significantly affect his RFC. 20 C.F.R. § 404.1569; *Fraga,* 810 F.2d at 1304.

  Plaintiff asserts that, because Dr. Fontana permanently restricted Plaintiff from lifting from the floor and opined that Plaintiff should have breaks during walking and standing up to two hours, the ALJ should have asked the vocational expert whether these limitations might affect the ability to perform a full range of sedentary work by a person with Plaintiff's vocational factors. (ECF No. 10, at 7). Plaintiff alleges that the ALJ should have asked the vocational expert whether the limitation to sitting no more than six hours in an eight-hour workday, opined by Dr. Coulter and Dr. Kossman, would have impacted the ability to perform a full range of sedentary work by a person with Plaintiff's vocational factors. *Id.* at 9. Plaintiff submits that the ALJ should have asked the vocational expert whether Dr. Kossman's opinion that Plaintiff could never climb ladders, ropes, or scaffolds; could occasionally climb ramps and stairs; and could occasionally balance, stoop, kneel, crouch, and crawl, would have affected the ability to perform a full range of

9

sedentary work by a person with Plaintiff's vocational factors. (ECF No. 10, at 9; ECF No. 12, at 6).

The ALJ, however, was not required to obtain testimony from the vocational expert because substantial evidence supported her conclusion that Plaintiff's RFC coincided with the requirements for a full range of sedentary work. The ALJ was not required to accept Dr. Fontana's opinion that Plaintiff should never lift from the floor. Neither Dr. Coulter nor Dr. Kossman held that opinion. The ALJ was not required to adopt Dr. Kossman's opinion that Plaintiff could never climb ladders, ropes, or scaffolds; could occasionally climb ramps and stairs; and could occasionally balance, stoop, kneel, crouch, and crawl. Dr. Coulter found that Plaintiff had the ability to frequently climb, balance, craw, and stoop. (ECF No. 8, at 287).[1]

As for Plaintiff's argument regarding the ALJ's decision not to ask the vocational expert about Plaintiff's limitations in sitting, the definition of sedentary work is instructive. A claimant is able to perform sedentary work – the classification assigned to the least physically demanding form of employment – if he can sit and lift up to ten pounds at a time, although occasional walking and standing may be required. *Ramirez v. Colvin,* 606 F. App'x 775, 778 (5th Cir. 2015) (citing 20 C.F.R. §§ 404.1567(a)). "Social Security Ruling 83-10 elaborates on this definition of 'sedentary work,' providing that 'standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally

---

[1] SSR 96-9p provides that "[p]ostural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work." 1996 WL 374185, at *8.

total approximately 6 hours of an 8-hour workday.'" *Id.* (citing SSR 83-10, 1983 WL 31251). SSR 96-9p provides that in order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately six hours of an eight-hour workday, with a morning break, a lunch period, and an afternoon break at approximately two-hour intervals. SSR 96-9p, 1996 WL 374185 (July 2, 1996).

Dr. Coulter found that Plaintiff had a "[m]aximum sitting capacity 6 hours/ within an 8-hour shift." (R. at 287). This finding falls within the definition of sedentary work. Dr. Kossman found that Plaintiff could "sit (with normal breaks) for a total of about 6 hours in an 8-hour workday." (ECF No. 8, at 289). This finding also falls within the definition of sedentary work. Dr. Coulter's and Dr. Kossman's medical opinions are substantial evidence supporting the ALJ's finding that Plaintiff, through the date last insured, was capable of performing the sitting requirements for a full range of sedentary work for two-hour blocks in an eight-hour workday, five days per week (or an equivalent work schedule), without the need for additional work breaks, excessive absences, or other accommodations. *Id.* at 421.

With respect to non-exertional impairments, Plaintiff maintains that the ALJ failed to consider his special education background and did not establish that he has the mathematics or language skills to perform a full range of sedentary work. (ECF No. 10, at 11). The ALJ, however, clearly considered Plaintiff's education as a vocational factor in concluding that Plaintiff was capable of adjusting to other work. The ALJ specifically found that Plaintiff had "at least a high school education and is

able to communicate in English." (ECF No. 8, at 423). The Social Security Administration generally considers that someone with a high school education who can communicate in English "can do semi-skilled through skilled work." 20 C.F.R. §§ 404.1564(b), 416.964(b)(4). Furthermore, below average intelligence is not a non-exertional impairment precluding application of the Grids. *See Arce v. Barnhart,* 185 F. App'x 437, 439 (5th Cir. 2006); *Collins v. Sullivan,* 985 F.2d 556, *2 (5th Cir. 1993); *Selders v. Sullivan,* 914 F.2d 614, 619 (5th Cir. 1990); *Johnson v. Sullivan,* 894 F.2d 683, 686 (5th Cir. 1990).

Plaintiff submits that the ALJ did not give good reasons for discounting his evidence that frequent urination and headaches, both side effects of Plaintiff's high blood pressure medication, would have caused him to miss some work and take more than five breaks during the workday. (ECF No. 8, at 11-14, 479-80). Plaintiff testified that he urinated about ten times a day. *Id.* at 475. Proceedings at both hearings were interrupted for Plaintiff to take a restroom break.

The ALJ discounted Plaintiff's complaints regarding the side effects of his medications because "the medical evidence does not show that [Plaintiff] has complained of persistent side effects of medication to his physicians." *Id.* at 421. The ALJ noted the medical records from Victory Health Center which showed that Plaintiff was not on high blood pressure medication when he presented on July 29, 2010, the date that he claims he became disabled. *Id.* at 278. Plaintiff was first prescribed blood pressure medication on this date. The medication was increased on August 27, 2010, and those records indicate no complaints regarding frequent

urination. (R. at 280). Neither do the medical records from May 10, 2011; May 17, 2011; June 7, 2011; June 21, 2011; August 10, 2011; September 7, 2011; September 21, 2011; or October 12, 2011. On July 22, 2011, Plaintiff specifically denied changes in bowels or bladder function. *Id.* at 308. The medical records indicate complaints about headaches in May and June 2011, but Plaintiff denied headaches in July 2011. (R. at 299-300, 308). Medical records from August, September, and October 2011 reflect that Plaintiff's headaches were responsive to medication. *Id.* at 310, 312, 318. These medical records are substantial evidence supporting the ALJ's finding that the side effects of Plaintiff's medication did not significantly affect his RFC. The ALJ's finding that Plaintiff's RFC, age, education, and past work history coincided with Grid Rule 201.21 and directed a finding of "not disabled" is supported and conclusive.

## IV. Recommendation

It is recommended that Plaintiff's Motion for Summary Judgment (ECF No. 9) be DENIED and the Commissioner's decision AFFIRMED.

## V. Notice of Right to Object

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve and file written objections to the report and recommendations. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned district judge. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection.

L.U. Civ. R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen (14) days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir.1996).

SIGNED, this the 3rd day of January, 2018.

*s/ John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE